### COLBY v. PORTMAN.

1. REPLEVIN—JOINT OWNERS—INSTRUCTIONS.

An instruction in replevin for a piano, which plaintiff claimed as a gift from defendant's father, that unless the alleged donor was the sole owner of the instrument he could not make a lawful gift of it, was erroneously modified by adding, "without the consent of the other joint owner," where defendant was the only person who could have been a joint owner, and there was no evidence that she ever consented to the alleged gift.

2. SAME—PARTIES—DEFENSES.

The daughter of defendant in replevin is not a necessary party to the action, where defendant was in possession of the property, and refused to surrender it on demand, although she sets up the defense of title in such daughter.

3. GIFT—DELIVERY.

A sufficient delivery of a piano from the donor to the donee takes place where a piano previously given to the donee is exchanged at her request for the one in question, which is moved into the donor's house, where the donee makes her home.

4. TRIAL — ERROR IN RECEIVING INCOMPETENT TESTIMONY — DUTY OF COURT—INSTRUCTIONS.

Where the trial court concludes that incompetent evidence has been admitted, he should point it out specifically, and direct the jury to disregard it; and it is error to instruct them generally that, if they find that part of the evidence is "rubbish," having no bearing upon the issue, they may disregard it.

Error to Berrien; Coolidge, J. Submitted October 15, 1897. Decided November 23, 1897.

Replevin by Emma L. Colby against Emma Portman. From a judgment for plaintiff, defendant brings error. Reversed.

*Plummer & Riford* and *Valentine & Ellsworth*, for appellant.

*James O'Hara*, for appellee.

Long, C. J. This is an action of replevin. The cause was tried in the Berrien circuit before a jury, and plaintiff had a verdict and judgment. Defendant brings error.

The property in controversy is a piano. The plaintiff was the daughter-in-law of Mr. Charles Colby, deceased, and the defendant was his daughter. Plaintiff testified on the trial that she was married to Charles Colby, Jr., in 1887, and after her marriage she and her husband lived with Charles Colby, Sr., for six or seven years; that defendant was married at that time, and living away from her father's house; that plaintiff had one child; that about this time Mr. Colby, Sr., spoke to her about a piano; and that she went to the store with him, where he spoke to Mrs. Antisdale, who kept the store, and said he had never given her anything, he had done nothing for her, and wanted her to have one. Plaintiff then testified: "I had made complaint about the old one. He said to Mrs. Antisdale that he was 'going to get this girl a piano' (laying his hand on my shoulder)." That a Chase piano was taken from the store to the house of Mr. Colby, and kept there about six months. Plaintiff was asked what became of the Chase piano, and testified:

"I didn't like the light wood. I was satisfied with the piano in every other way. I stated my objections, and he said, as long as it was to be my piano, and I was to play upon it, I was the one to be suited; I should have what I wanted. So he changed it, and got a dark one for me. This dark piano is the one in suit, and is called a 'Gabler Piano.'"

It appears that the child died, and that soon after the plaintiff and her husband separated. They have not lived together since. Mr. Colby, Sr., and his wife have since died. The plaintiff left the home of her father-in-law at the time of her separation from her husband. The piano remained in the Colby house. Plaintiff's mother also testified that Mr. Colby told her the day he bought the Chase piano that he had bought it for plaintiff.

The defendant testified that when she was a small child her mother owned a melodeon; that when she was about 10 years of age her mother sold the melodeon, and used that money in the purchase of a square piano; that this square piano was given to her, and always called hers; that she took music lessons on it, and always considered it hers, to do what she pleased with; that, when she married and went from home, she left it at her father's house; that in the fall of 1888 her father called at her house, and spoke to her about trading her square piano for a Chase, and said, with her permission, he would do so, provided it might remain in his house until defendant's little girl was of an age to take music lessons, when it was to be hers; that she objected to trading for a Chase piano, as she did not like that make; that, a short time after, she saw a Chase piano in her father's house, and her square piano was also there; that her father asked her how she liked the Chase, and she told him she did not like that kind, and he said he would not buy it; that he did not buy it, but it was taken away; that, about a year after, her father told her he had found a Gabler piano, and she told him, if he had a chance to exchange her piano for that make, she would do as he suggested in reference to the Chase (that is, leave it at his house until her daughter was old enough to take lessons, when it should be hers); that her father then traded her square piano for the Gabler,— the one in suit; that her father thereafter died, and her mother then had the piano moved to defendant's house in the spring of 1894, and she had had it in her possession for

her daughter since that time until taken away on plaintiff's writ; that plaintiff knew she had the piano in her possession, and made no objection to it.

Testimony was introduced on the part of plaintiff tending to show that, although she and her husband had separated, yet the father and mother of her husband had always exhibited a strong affection and regard for her. Testimony was also given tending to show that in another trial the defendant had stated that this piano was purchased by her father for the house, and that at that time she made no claim for her daughter, except that her mother gave it to the daughter.

At the close of the testimony, the court, after directing the jury that the burden of proof was upon the plaintiff, and that she must establish her case by a preponderance of evidence, said:

"If the theory of the plaintiff be true in this case,—if you find that the preponderance of the evidence supports the theory of the plaintiff,—it is your duty to return a verdict for the plaintiff. If, on the other hand, you find that the contention of the defendant is sustained, then it would be your duty to return a verdict for the defendant."

Defendant's counsel asked the court to instruct the jury that "unless Charles Colby, Sr., was the sole owner of the piano in question, he could not make a lawful gift of it." This request was given, but the court added to it the following, "without the consent of the other joint owner." Error is assigned upon this modification of the request. We think the court was in error in so modifying it. There was no evidence in the case of any joint ownership of it, and, if there had been, there was no evidence that Mrs. Portman ever consented that her father might give it to the plaintiff. This modification must have been misleading to the jury. If the defendant's theory is true, under the arrangement made between her and her father the piano in suit belonged to the defendant's daughter, and the father would have no authority to give it to the plaintiff. It is not claimed that

the defendant or her daughter ever assented to such a gift. The only joint owners there could possibly have been were Mr. Colby, the defendant, and her daughter. The defendant was entitled to have the request given without the modification.

Some contention is made that there was no evidence tending to show that the defendant was detaining the piano, or that she claimed any interest in it or control over it. It appears, however, that a demand was made upon both her and her husband, and the defendant refused to surrender it.

It is also contended that the daughter of defendant should have been made a party. This is a possessory action. The defendant was in possession, and, upon demand, refused to surrender it. On the trial she had the right to show the title in her daughter, and that was the defense she made. We think there is no merit in the point raised.

It is also contended that the plaintiff's proof did not show a completed gift of the piano in suit; that it had reference to the Chase piano; and that, even if that were given her, she has not shown any gift of the Gabler. We think this cannot be said, when we look at the plaintiff's testimony. She says that the Chase piano was given her, and, at her request, was exchanged for the Gabler. All the possession possible for her to take was given. The parties lived in the same house, and if the piano was purchased by Mr. Colby for her, and given to her, and moved into the house where she lived, it was sufficient possession to make the gift complete.

One other contention is made, which we think of importance to notice. The court charged the jury that:

"There is, perhaps, a mass of rubbish in this case, which has been introduced, which has no vital bearing upon the case whatever; but it is here before you, and you must throw it aside. You will have to sift the evidence, and throw out what really has no bearing upon the case, and get at the real facts which bear upon the issue."

It was the duty of the court to pass upon the admissibility of the evidence. If any evidence had been admitted which the court subsequently thought should not have been admitted, that portion should have been pointed out specifically, and the jury directed to disregard it; but it was error for the court to submit the whole evidence to the jury, and then direct them that, if they found a part of it rubbish, they might disregard it. Such charge left it to the jury to determine what was, and what was not, competent evidence.

We find no other errors in the case. The judgment must be reversed, and a new trial granted.

The other Justices concurred.