PATCHEL *v.* THOMPSON'S ESTATE.

1. EXECUTORS AND ADMINISTRATORS—GIFTS—PROOF OF OWNERSHIP.
   In proceedings by the administrator of a daughter's estate
   against the estate of her father for the value of certain
   personal property claimed to have been converted by the
   father, proof of the daughter's ownership of a player piano,
   given to her by her father, as well as other articles,
   *held*, sufficient.

2. SAME—ADMINISTERING PART OF ESTATE NOT INCLUDED IN FORMER
   ADMINISTRATION.
   Under 3 Comp. Laws 1915, § 13830, the probate court
   may appoint an administrator to administer property be-
   longing to an estate not administered by a former ad-
   ministrator.

3. CONVERSION—DEFINITION.
   Conversion is an unauthorized assumption and exercise
   of the right of ownership over goods or personal chattels
   belonging to another, to the alteration of their condition
   or the exclusion of an owner's right.

4. EXECUTORS AND ADMINISTRATORS—CONVERSION.
   Evidence *held*, sufficient to justify the finding of the jury
   that the father, who was administrator of his daughter's
   estate, converted to his own use personal property be-
   longing to her estate.

5. APPEAL AND ERROR — TRIAL—ARGUMENT OF COUNSEL—INSTRUC-
   TIONS—CURING ERROR.
   Argument of counsel, *held*, not prejudicial error, in view
   of the explicit instruction of the court to the jury as to
   the issue they must determine.

Error to Shiawassee; Collins (Joseph H.), J.   Sub-
mitted April 18, 1923.    (Docket No. 82.)     Decided
June 4, 1923.

Samuel C. Patchel, administrator *de bonis non* of
the estate of Leah E. Barton, deceased, presented a

claim against the estate of Willard D. Thompson, deceased, for the value of certain personal property of his intestate. The claim was disallowed by the commissioners, and plaintiff appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Affirmed.

*William J. Parker* (*Terry & Parsons*, of counsel), for appellant.

*Matthews & Hicks*, for appellee.

SHARPE, J. Willard D. Thompson and his wife lived for many years in Durand. They had one child, a daughter named Leah, who was married in 1912 to Wirt E. Barton. A son, Paul, was born to the Bartons on January 5, 1917. Mrs. Barton died about a month later. During their entire married life they had lived in the Thompson home. Wirt and the boy continued to live there, after her death, until his remarriage in June, 1919. Mrs. Thompson died in January, 1920. In December, 1920, Thompson married Carrie Holcomb. Shortly thereafter, he placed the title to all his realty and a large part of his personalty in himself and his wife jointly. He died on February 27, 1921. On March 17, 1917, soon after Mrs. Barton's death, Wirt E. Barton petitioned the probate court for the appointment of Mr. Thompson as administrator of her estate. In the blank form of petition used, the real estate was estimated to be worth about $1,800. Nothing was inserted in the blank space for the estimated value of the personalty, and none was administered. Administration was had, report made and the administrator discharged. In November, 1921, on application to the probate court, Samuel C. Patchel was appointed administrator *de bonis non* of the estate of Leah. As such administrator he filed a claim against the estate of Willard

D. Thompson, then being administered, for personal property, a list of which was furnished, consisting of wedding and other presents given to Leah by her parents and other persons, household articles, clothing and fancy work, purchased or made by her and in the Thompson home at the time of her death and thereafter retained, used and controlled by Mr. Thompson in such a way and under such circumstances as amounted in law to a conversion of them by him, amounting in all to the sum of $1,552.    From the action of the commissioners on claims an appeal was taken to the circuit court, resulting in a verdict of $1,000 for the claimant.    The administrator of the Thompson estate reviews the judgment entered thereon by writ of error.    The assignments will be considered in the order discussed by counsel for appellant.

1. It is contended that there was no sufficient proof of the ownership of the property by Leah Barton at the time of her death.    It would extend this opinion beyond reasonable length to review the testimony in this respect as to the more than one hundred articles for which claim was made.    We shall refer to but a few of them.    That most valuable was a piano player listed as worth $750.    Asa H. Moulton testified that Mr. Thompson purchased this instrument from him in October, 1917, for a Christmas present for Leah; that it was kept by Mr. Thompson in his store until that time; that he, Moulton, delivered it at the Thompson home and Leah expressed to her father her appreciation of "her Christmas present." Cora M. Snyder, a neighbor, testified that Leah, in the presence of her father and mother, told her it was a Christmas present from her father.

It is insisted that a gift *inter vivos* cannot be established by the declaration of the donor.    *Lerche* v. *Kishpaugh*, 180 Mich. 617, and cases cited.    The gift

claimed to have been made in that case was of money. The piano player was taken to the home occupied by Leah with her parents by Mr. Moulton and possession of it so far as possible was delivered to her. The proofs as to this and many other articles are clearly sufficient under the rule laid down in *Colby* v. *Portman*, 115 Mich. 95, 99.

Claim was made for a china cabinet, valued at $40. Hattie Hendee, a sister of Leah's mother, testified that Leah bought this cabinet with her own money saved from the rent of the house and lot her father had given her. Many of the articles consisted of clothing and fancy work. There is an abundance of proof that these were made by Leah personally and worn and used by her in her lifetime. As to substantially all of them, a question for the jury was presented.

2. It is claimed that the subject-matter is *res judicata* by reason of the administration of Leah's estate theretofore had. The present administrator was appointed on petition to the probate court showing that property belonging to the estate had not been included in the inventory of the former administrator. The statute (3 Comp. Laws 1915, § 13830) provides that "the court of probate may commit administration of the estate not already administered to some suitable person." The purpose is to collect for the benefit of creditors or those entitled under the statute of distributions. It is clear that the neglect of the former administrator to administer property belonging to her estate or the acquiescence of Mr. Barton, the former husband of Leah, as an individual or as guardian of his son, Paul, in his action in not doing so, in no way affects the right or duty of the present administrator to act in the matter.

3. Was there evidence to justify the submission of the question of conversion to the jury? As we view

it, this is the serious question presented. On the death of Leah the title to personal property owned by her at her death remained in abeyance until the appointment of her father as administrator of her estate. It then passed to him. He took no steps to reduce it to his possession as administrator, nor to administer it, as it was clearly his duty to do under the law. After his discharge and death, Mr. Patchel was appointed. He succeeded to the title which Leah had at her death. It was clearly his duty to administer any property or assets belonging to her estate not already administered. Otherwise, as already stated, the rights secured by statute to creditors or distributees could be cut off by the neglect or failure of an administrator to perform his duty. Such neglect or failure on his part is in no way controlling except as it may bear upon the ownership of the property in question at the time of Leah's death. The complication arises largely from the fact that Leah and her husband and little boy were at all times members of her father's household. There can be no question about her ownership of the player piano and the china cabinet above referred to. The same is true as to her wedding presents, her clothing and articles made by her, apparently in anticipation of the probability that she and her family would at some time occupy a separate home. The only question is, Did her father after her death assume and exercise such a right of ownership and control over them as amounted in law to a conversion? The rule is thus stated in 38 Cyc. p. 2005:

"Conversion is 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.' The legal wrong denominated 'conversion' is any unauthorized act of dominion or ownership

exercised by one person over personal property be-longing to another; and 'trover' is the technical name of the common-law action provided for the redress thereof."

The retention of possession by the father would not in itself, in the absence of demand (and none was here made), amount to a conversion.    Possession must be accompanied by such a' use and control and the asser-tion of ownership rights as to necessarily lead to the conviction that a demand would have been useless. The trial court, at the request of the defendant, in-structed the jury:

"I charge you that in order to charge the defendant estate with the value of any of the items mentioned in the claim on which this suit is based, you must find by a preponderance of the evidence as to each item, that said item was the property of said Leah Barton in her lifetime, and that Willard D. Thompson, in his lifetime, did some act in relation thereto which would amount to the assumption or claim of ownership thereof as against some person who had a legal right thereto.    And I charge you that the mere refusal by said Willard D. Thompson to deliver any of the prop-erty in question to Wirt Barton, or to his wife, or to them jointly, would not constitute such an assump-tion of ownership by W. D. Thompson as to make his conduct in so doing a conversion of the property or charge his estate with the cash value thereof in this suit."

Was there sufficient proof to justify this instruc-tion?    That Mr. Thompson did not inventory or ad-minister this property as assets of her estate might be considered.    Did he thereby intend to deny owner-ship in her and assert ownership in himself?    A considerable amount, if not all, of Leah's clothing was given away by her mother to relatives.    There is evidence that some of such gifts were made with the assent of the father.    The present Mrs. Barton testi-fied as to a conversation with Mr. Thompson:

"I reminded him of that conversation he and Mrs. Thompson and I had had in regard to the rest of the wedding presents coming to Paul when she was through with them.  Of course she was through with them and he was married again.  \* \* \* Of course he started right off denying everything. \* \* \* He didn't deny they belonged to Leah, no, but he said they didn't belong to her now, that she had given these things to her father and mother before she died.  I had reminded him of that affidavit he had made at the time he was administrator of his estate and he said she had no personal property, then I asked him how about these articles, were they not personal property?  I understood they were.  He said she did not leave home, she had given them to her father and mother before she died."

This conversation was had long after Mr. Thompson had been discharged as administrator.  Anna E. Fox, a neighbor, testified that she and her husband had given the Bartons a hand-painted lemonade pitcher as a wedding present; that about the time of Mr. Barton's second marriage she talked with Mr. Thompson about giving this pitcher to them; that he said "no, he had no intentions of giving them the pitcher, because he told me he was going to be married and wanted it himself;" that he said, "If you would put yourself in my place perhaps you would see things differently.  \* \* \* He said he had had some words over the pitcher and other things that Mr. Barton claimed were his."  There is testimony that many of the articles claimed were in use in the Thompson home until the time of his death and that he died on a bedstead which Leah had owned.

The verdict was much less than the amount of the claim. There is nothing to indicate what items were allowed and what were disallowed.  A careful reading of the record satisfies us that there was sufficient evidence to justify a verdict, and we are unable to

find that it is so excessive as would justify us in setting it aside.

4. Error is assigned on the argument of counsel for the claimant. Without quoting that complained of, it is sufficient to say that the jurors were cautioned to disregard it and, in view of the explicit instruction of the court as to the issue they must determine, we are not impressed that prejudicial error resulted therefrom. *Houser* v. *Carmody*, 173 Mich. 121, 135.

The other errors assigned have been considered. We find none justifying a reversal.

The judgment is affirmed, with costs to appellee.

WIEST, C: J., and FELLOWS, MCDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.